## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| **GREGORY NOBLES**, an individual, | ) ) ) |
| Plaintiff | ) ) |
| v. | ) ) ) |
| **FEDERAL RESERVE BANK OF ATLANTA**, **BOARD OF GOVERNORS OF THE FEDERAL RESERVE SYSTEM,** and **DAVE MCDERMITT,** an individual, | ) ) ) ) ) ) ) |
| Defendants. | ) ) ) |

Civil Action File No.:  1:14-CV-2541-TCT-LTW

**COMPLAINT FOR DAMAGES FOR:**

**1. Unlawful Discrimination in Violation of 42 U.S.C. § 1981**

**DEMAND FOR JURY TRIAL**

## INTRODUCTION

This is an action for racial discrimination in employment brought pursuant to the Civil Rights Act of 1866, Title 42 United States Code Section 1981, for remedies for employment discrimination on account of race by defendant Federal Reserve Bank of Atlanta (hereinafter "FRB"), the Board of Governors of the Federal Reserve System (hereinafter "Board"), and Dave McDermitt ("McDermitt") (hereafter collectively "Defendants").  Plaintiff Greg Nobles ("Mr. Nobles" or "Plaintiff") alleges that Defendants intentionally and purposefully discriminated against and fired plaintiff on account of his race.  By this action, Plaintiff seeks all legal relief to which he may be entitled, including but not limited to: back pay, front pay, compensatory and punitive damages, attorney's fees and costs, and prejudgment interest against defendants FRB and McDermitt.  Plaintiff alleges as follows:

## JURISDICTION

1. Jurisdiction of the subject matter of this action is established in this Court by 28 U.S.C. § 1343(a)(4) and 42 U.S.C. § 1981.

## VENUE

2. This is the proper venue for this action under 28 U.S.C. § 1391(b) as defendants reside in this District and the acts giving rise to the below set forth claims occurred within this District.

## PARTIES

3. Plaintiff Gregory Nobles (hereinafter "Nobles") is a black male, who at all relevant times herein, resided in the County of Henry, State of Georgia.

4. Defendant Federal Reserve Bank of Atlanta, is an unknown business entity, with its headquarters in Fulton County, Georgia and may be served at its principal place of business located at 1000 Peachtree St. N.E., Atlanta, GA 30309.

5. Defendant Board of Governors of the Federal Reserve System, is an unknown business entity, with its headquarters in Washington, D.C. and may be served at its principal place of business located at 20th St. and Constitution Ave., NW, Washington, D.C. 20551.

6. Defendant Dave McDermitt is an individual who, at all relevant times herein, served as Informational Security Manager of FRB and may be served at 1000 Peachtree St. N.E., Atlanta, GA 30309.

7. As to some of the conduct alleged herein, the individual defendant was an agent and/or employee of FRB, and was acting within the course and scope of said agency or employment.  As to other conduct, the individual defendant was serving a purpose of his own in carrying out the conduct described below against Plaintiff.  Each named defendant aided and assisted the other defendant in committing the wrongful acts alleged herein, and plaintiff's damages, as alleged herein, were proximately caused by such defendants.

## FACTUAL ALLEGATIONS

8.   Nobles began working for FRB in December 2006.

9.   In or around 2008, FRB promoted Nobles to Technical (Information) Security Analyst.

10.  Nobles was promoted again in or around 2010 to Information Security Manager ("ISM") for FRB.

11.  As ISM, FRB told Nobles he was next in line for promotion to Informational Security Director ("ISD") and in fact, for approximately eight months, Nobles was "acting" ISD.

12.  Nobles was well qualified for the ISD position and received excellent performance reviews.

13.  However, in or around 2011, despite having applied for the open ISD position, FRB passed over Nobles for promotion, and instead filled the open position with someone from outside of FRB, Defendant McDermitt.

14.  McDermitt, a white male, was, at all relevant times, the ISD for FRB and Nobles' direct supervisor.

15.  Nobles inquired into why he was not chosen for the position and was simply told that he shouldn't be concerned because he was "next in line."

16.  Not long after he started, McDermitt began making racially charged comments to Nobles, including but limited to, referring to black employees as "lazy" and "deadwood", and informing Nobles that he grew up referring to black people as "coons" and "niggers."

17.  On another occasion, McDermitt told Nobles that another black employee should be "taken out back" for the condition of her department, insinuating that she should be beaten as were insolent slaves.

18.  McDermitt also made the comment to Nobles that AIDS originated in Africa and that someone who has AIDS must have had sex with an African.

19. Nobles complained to McDermitt about his racist comments and let him know that he was deeply offended but McDermitt's did not change his conduct.

20. McDermitt also denied Nobles and other black employees reimbursement for business expenses when white employees were reimbursed.

21. In the course of conversation, McDermitt soon came to find out that Nobles was having financial issues.

22. In or around June 2011, McDermitt coaxed Nobles into applying for a higher level security clearance which was not required for his ISM position.

23. In an effort to advance his career, Nobles applied for the clearance.

24. On or about January 11, 2012, Nobles was granted conditional security clearance and the option to withdraw his clearance application entirely.

25. On or about April 25, 2012, Nobles spoke with FRB's Personnel Security Specialist who informed him that the security clearance was a requirement of the ISM position and he was required to fulfill the conditions if he wanted to remain employed.

26. Nobles attempted to explain to the Personnel Security Specialist that the clearance was optional for the ISM position and he later confirmed this fact with McDermitt.

27. McDermitt told Nobles that the clearance was "absolutely not" required for his position and loss of the conditional clearance would not affect Nobles' employment in any way.

28. Around this time, Nobles decided to have his clearance application withdrawn in accordance with the letter he received granting conditional clearance.

29. On or about May 30, 2012, FRB revoked Nobles' conditional clearance for "failure to comply with the stated financial conditions and placed Nobles on paid administrative leave for three months pending the final determination of Nobles' imminent appeal.

30. On or about July 11, 2012, Nobles requested review of the revocation decision.

31. On or about September 14, 2012,  the Deputy Director of the Management Division sent Nobles notification that he had upheld the prior decision and that he was terminated.

32. Upon information and belief, when FRB placed him on leave, Nobles' position and office were given to a white male.

33. Nobles timely appealed and on or about May 14, 2013 to the Board.

34. The Board  has regulatory and supervisory responsibilities over banks that are members of the Federal Reserve System.

35. The Board reversed FRB's decision to terminate  Nobles.

36. The Board explicitly told Nobles that the FRB was not to release him of his duties while the clearance was under review.

37. After nine months of leave without pay, on or about June 13, 2013, FRB contacted Nobles and informed him that although his appeal was successful and his conditional clearance had been reinstated, Nobles' position as ISM was no longer available.

38. FRB offered Nobles a demotion stripping him of his supervisory role and forcing him to report to McDermitt, then Assistant Vice President and the man who had been discriminating against Nobles because of his race.

## FIRST CLAIM FOR VIOLATION OF THE
## CIVIL RIGHTS ACT OF 1966, 42 U.S.C. § 1981
### (Against All Defendants)

39. Plaintiff restates and incorporates by reference each and every allegation contained in paragraphs 1 through 38, inclusive, as though fully set forth herein.

40. Plaintiff provided services to Defendant FRB.

41. Plaintiff was treated adversely in the performance of duties based on his race. That adverse treatment included a requirement that he obtain security clearance that was not necessary for his position, and subsequently being fired for not obtaining that clearance.

42. The conduct of Defendants, and each of them, in unfairly requiring Plaintiff to have an unnecessary clearance and in firing Plaintiff was intentional discrimination by Defendants, and each of them, based on race.

43. Defendants, and each of them, have deprived Plaintiff of the enjoyment of all benefits, privileges, terms and conditions of his employment relationship.

44. As a direct result of the aforesaid discriminatory acts, Plaintiff has been damaged in that he has lost, and continues to lose earnings and benefits, from the date of his leave without pay until Plaintiff can find work in a comparable business in a comparable neighborhood.

45. As a further proximate result of Defendants' unlawful and intentional discriminatory actions against Plaintiff, as alleged above, Plaintiff has been harmed in that Plaintiff has suffered emotional pain, humiliation, mental anguish, loss of enjoyment of life, and emotional distress. As a result of such discrimination and consequent harm, Plaintiff has suffered such damages in an amount according to proof.

46. In firing Plaintiff, Defendants, and each of them, acted with evil motive and intent and were callously indifferent to Plaintiff's rights. Such conduct warrants an award of punitive damages against Defendants, and each of them.

### PRAYER FOR RELIEF

Wherefore, Plaintiff prays for judgment as follows:

1. For compensatory damages including loss of prospective earnings and commissions according to proof;

2. For general damages according to proof;

3. For punitive damages;

4.      For reasonable attorneys' fees pursuant to 42 U.S.C. § 1988.

5.      For costs of suit incurred herein;

6.      For such other and further relief as this Court may deem just and proper.


        Respectfully submitted by,

                                        /s/ J. Stephen Mixon
                                        _____
                                        J. Stephen Mixon, Esq.
                                        Counsel for Plaintiff
                                        Georgia Bar No. 514050

MILLAR & MIXON, LLC
1691 Phoenix Blvd., Suite 150
Atlanta, GA 30349
Tel: 770-955-0100
Fax: 678-999-5039
Email: steve@mixon-law.com